**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **S.A.S.B. CORP.** *d/b/a/ OKEECHOBEE DISCOUNT DRUGS*, <br><br> Plaintiff, <br><br> v. <br><br> **JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC. & JANSSEN PHARMACEUTICALS INC.,** <br><br> Defendants. | Civil Action No. 23-21124 (ZNQ) (JTQ) <br><br> **OPINION** |

**QURAISHI, District Judge**

This matter comes before the Court upon the Motion to Dismiss the Complaint (the "Motion", ECF No. 14) filed by Defendants Johnson & Johnson Health Care Systems Inc. and Janssen Pharmaceuticals, Inc. ("Janssen") (collectively, "Defendants"). In support of their Motion, Defendants filed a brief ("Moving Br.", ECF No. 14-1). Plaintiff S.A.S.B. Corp. ("Plaintiff") filed a brief in opposition ("Opp'n Br.", ECF No. 16), to which Defendants replied ("Reply Br.", ECF No. 17). After careful consideration of the parties' submissions, the Court decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1] For the reasons outlined below, the Court will **GRANT** Defendants' Motion to Dismiss.

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

## I.   **FACTUAL AND PROCEDURAL BACKGROUND**[2]

Plaintiff is a family-owned pharmacy.  ("Complaint," ECF No. 1 ¶ 19.)  Defendants are subsidiaries of Johnson & Johnson.  (*Id.* ¶ 16.)  On October 20, 2020, Plaintiff's fax machine received a two-page "advertisement" (the "Fax," Compl. at 21–22) that was allegedly sent by Defendants or someone acting on Defendants' behalf.  (*Id.* ¶ 3.)  Both pages of the Fax recite an individual's name and telephone number at the top.  (*Id.* ¶ 22.)  The Fax purportedly promotes the sale of Xarelto, a prescription medication licensed exclusively by Janssen, as well as the use of Janssen's CarePath program ("CarePath"), including the program's website.  (*Id.* ¶¶ 4–5, 25–26.)  CarePath is a patient support program that offers free savings options and resources for patients to learn about, afford, and stay on their medication.  (*Id.* ¶ 29.)  Its website has patient and provider portals.[3]  (*Id.* ¶ 28.)  The Fax promotes CarePath's services for specific Johnson & Johnson products, gives pharmacists information to pass along to patients about the program, and is designed to influence Plaintiff and other pharmacists to recommend CarePath to patients.  (*Id.* ¶¶ 31–32.)

Plaintiff did not give permission or an express invitation for Defendants to send advertising material to its fax machine.  (*Id.* ¶¶ 6, 36.)

On October 12, 2023, Plaintiff filed this class action lawsuit against Defendants, alleging in just one count a violation of the Telephone Consumer Protection Act ("TCPA").  (Compl.)  Defendants filed the instant motion to dismiss on January 4, 2024.  (ECF No. 14.)

---

[2] For the purpose of considering the instant Motion, the Court accepts all factual allegations in the Complaint as true.  *See Phillips v. Cnty of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).
[3] The CarePath program promotes the sale of prescription pharmaceutical products offered by Johnson & Johnson.  (Compl. ¶ 5.)

## II.   **JURISDICTION**

The Court has federal question jurisdiction over the claim herein pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

## III.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.   **DISCUSSION**

The Complaint asserts a cause of action in Count I for violation of the TCPA. (Compl. ¶¶ 49–68.)   The TCPA generally prohibits the use of a fax machine to send an "unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C).   An unsolicited advertisement is defined by statute as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *Id.* § 227(a)(5).   Faxes that are merely informational are not advertisements and thus are not actionable under the TCPA. *Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, Civ. No. 12-2132, 2013 WL 486207, at *2–3 (D.N.J. Feb. 6, 2013) ("*Physicians*").

Defendants argue that the TCPA does not apply to Plaintiff's situation because the Fax is not an "unsolicited advertisement," as it does not promote or discuss the sale of Xarelto but rather points patients who have already been prescribed Xarelto to free resources to get information about the drug. (Moving Br. at 9–15.)   In other words, Defendants insist that both pages of the Fax contain "informational messages" that are not actionable under the TCPA.   (*Id.* at 8–15.) Defendants argue that, if anything, the Fax might, in the future, result in some ancillary benefit to Defendants, but that it is not for courts to speculate about such a possibility. (*Id.* at 12.)   Defendants additionally argue that it is implausible based on the facts alleged in the Complaint for Plaintiff to claim that Defendants sent the Fax. (*Id.* at 15–18.)   Defendants maintain that the Complaint fails to include any information that identifies the Fax's sender, including a header with an originating number, a fax cover sheet, or any other indication that the Fax was associated with Defendants. (*Id.* at 16.)   In fact, Defendants argue that a doctor's office and a health insurance carrier are both more plausible senders than Defendants, because Defendants would have no reason to know a specific patient's personal information such as their name and phone number, or the fact that a

patient who was prescribed Xarelto was planning to pick up their medication at Plaintiff's pharmacy in particular. (*Id.* at 16–17.)

Plaintiff argues that, by using Defendants' trademarks on a standard form template and discussing the CarePath program, the Fax does directly promote the sale of Defendants' product Xarelto. (Opp'n Br. at 9–11, 15.) Plaintiff insists that the Fax makes sales more likely to occur because the CarePath program provides resources to help lower out-of-pocket costs for patients, which ultimately enhances Defendants' commercial interests as a for-profit pharmaceutical company. (*Id.* at 9, 11.) Regarding the Fax's sender, Plaintiff argues that it is only plausible that Defendants spent the time, energy, and resources to create the Fax's template, as it is implausible that anyone else would seek to increase sales of Xarelto. (*Id.* at 16–20.) Additionally, Plaintiff emphasizes that the Fax contains Defendants' names and contact information, making it plausible that Defendants sent the Fax. (*Id.* at 19.)

Here, after examining the Fax[4] and the allegations in the Complaint, the Court finds that the Complaint does not state a plausible claim. Defendants do not dispute that the Fax was unsolicited. However, the Court finds that, on its face, the Fax is not an advertisement and thus that it falls outside the scope of the TCPA. Plaintiff concedes that the Fax "recites the required disclosures for Xarelto," which on the entire second page of the Fax include answers to pertinent medical questions about the medication that a patient might want to know, including what Xarelto is used for, what discussions should be had with the patient's doctor about Xarelto, what are Xarelto's most serious risks and important warnings, who should not take Xarelto, what are Xarelto's side effects, and other important facts for patients to know about Xarelto—all which convey drug safety information that does not have anything to do with the sale or cost of Xarelto.

---

[4] In deciding a motion to dismiss, the Court may consider documents outside of the operative complaint that are "integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

(Opp'n Br. at 7; Fax at 2.)   The second page of the fax thus unquestionably contains purely informational messaging.

The first page of the Fax is a closer call.  Still, although it explains to patients that Janssen's CarePath program may ultimately help them pay for Xarelto, the page is titled "Get Support for Your Janssen Medication," and directs patients to free resources that are generally available for their assistance at "janssenprescriptionassistance.com," as well as to the "Important Brief Summary" on the next page containing the medical information described herein.   (Fax at 1; Compl. ¶ 29.)  The overall thrust of the message portrayed by the Fax, including on its first page, is not to promote the availability or quality of Xarelto; rather, it is directed at patients who have already been prescribed Xarelto or at least have received a recommendation from their doctor to take Xarelto, and it seeks to provide them with resources to help them navigate that prescription or recommendation. (Fax at 1.)  Neither page of the Fax discusses the quality of Xarelto as a drug at all, for example by comparing its quality to that of similar medications. (*See* Fax.)  The Fax also does not discuss the commercial availability of Xarelto. (*See id.*)

Notably, discussion of a commercial drug is informational when the fax, as here, merely notifies patients about relevant information. *Physicians*, 2013 WL 486207, at *5.  Like the fax in *Physicians*, the Fax does not make patients aware of "where or how [Xarelto] is available for purchase," or contain any specific "pricing information, discounts, coupons, or product images" that are typically found in advertisements. *Id.*; *Robert W. Mauthe MD PC v. Millennium Health LLC*, 58 F.4th 93, 95 (3d Cir. 2023).  Moreover, Janssen's logo here appears only on the bottom of each page of the Fax, is moderately sized, and does not appear near the logo for Xarelto, which is at the top of the page.[5]  (*See* Fax.)  Therefore, like in *Physicians*, the Fax's use of Janssen's

---

[5] Although at the top of the page, the CarePath logo is located at the other corner, away from the Xarelto logo. (*See* Fax.)

company name and logo does not transform the Fax into an advertisement. *Physicians*, 2013 WL 486207, at *5–6. Likewise, Defendants' contact information is written in small font, while the messages about resources and patient support take up the majority of both pages of the Fax. *Id.*

For all of these reasons, the Court finds that the Fax is merely an informational message, and not an advertisement. Nonetheless, even if Plaintiff could cure the Complaint and allege facts to somehow support its claim that the Fax is an advertisement, the Court finds that it also must dismiss the claim because the pleading is deficient of factual allegations to support that Defendants were the sender of the Fax, and thus there is no liability under the TCPA. The Complaint contains just one conclusory allegation that Defendants sent the Fax, without any supporting allegations to make the assertion plausible. (*See* Compl. ¶ 3.) To the contrary, the Court agrees with Defendants that without anything more, the inclusion of a specific patient's name and contact information on each page of the Fax (redacted in the version attached to the Complaint) fails to support that Defendants would have sent the Fax, as there is nothing to indicate why Defendants would have reason to know this particular patient's information, that they were prescribed or recommended Xarelto, and that they were associated with Plaintiff's pharmacy in particular.[6] Importantly, in response to this point, Plaintiff argues only that Defendants created the Fax, and fails to provide any further reasoning or information that would suggest that Defendants actually sent the Fax. (Opp'n Br. at 10–11, 17.)

In sum, the Court concludes that the purpose of the Fax is not "to influence a potential buyer's decision in making a purchase," but to inform a patient about relevant medical and insurance information.[7] *Robert W. Mauthe, M.D., P.C. v. Optum Inc.*, 925 F.3d 129, 133 (3d Cir.

---

[6] Defendants add that it far more plausible that an insurance company for the individual patient named in the header, or that patient's doctor's office, sent the Fax. (Moving Br. at 17–18.) The Court agrees.
[7] At best, the resources described in the Fax might, at some unknown future point in time, result in an ancillary benefit to Defendants. Such an ancillary benefit is not enough to categorize the Fax as an advertisement, as it is too speculative for this Court to consider. *Physicians*, 2013 WL 486207, at *5.

2019).  The Court therefore finds that it cannot serve as the basis for a claim under the TCPA.

Accordingly, the Court will dismiss Count I without prejudice.

**V.**     **CONCLUSION**

For the reasons outlined above, Defendants' Motion to Dismiss will be GRANTED.

Plaintiff will be given leave to file an amended complaint, limited to addressing the deficiencies

identified herein, within 30 days.  An appropriate Order will follow.

Date: **August 27, 2024**

ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE